UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| SHIPLEY GARCIA ENTERPRISES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. M-12-89 |
| | § | |
| TED A. CURETON, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER DENYING SHIPLEY GARCIA ENTERPRISES, LLC'S AND BOBBY GARCIA'S MOTIONS TO REMAND, WITHDRAWING THE REFERENCE, AND CONSOLIDATING THIS ACTION WITH CIVIL ACTION NO. 11cv204

## I.     Introduction

Now before the Court are various Motions pending in this action and in a prior, related case, Civil Action No. 11cv204, styled *Garcia, et al. v. Cureton*.  As stated on the record at the May 11, 2012 hearing in both cases, the Court finds that resolution of the jurisdiction and abstention issues presented in this case must precede consideration of all other Motions in both cases.  Therefore, the Court now considers Plaintiff Shipley Garcia Enterprises, LLC's Motion to Remand for Mandatory or Permissive Abstention, or for Burford Abstention of This Civil Action (Doc. 5) and Intervenor Bobby Garcia's Motion to Remand (Doc. 8).  Upon consideration of the Motions and responsive briefing, in light of the relevant law, the Court finds that the Motions to Remand should be denied.  The Court also finds that the reference of this action to the bankruptcy court should be withdrawn and the action consolidated with Civil Action No. 11cv204 also pending in this Court.

## II.     Factual and Procedural Background

### A.     Civil Action No. 11cv204

Civil Action No. 11cv204 originated in the 92nd Judicial District, Hidalgo County, Texas, where on May 27, 2011, Plaintiff Bobby Garcia filed claims against Defendant Ted Cureton for breach of fiduciary duty, conversion, and fraud arising from the parties' participation in the purchase of a Harley-Davidson dealership in the Rio Grande Valley.  11cv204 at (Doc. 1 at pp. 7-11).[1]  According to Garcia, he and his "acquiring entity," Shipley Garcia Enterprises, LLC ("SGE"), agreed to purchase the dealership from Cureton who in turn required that the dealership retain Cureton as a consultant.  *Id.*  Garcia claims that Cureton breached his fiduciary duties of loyalty and non-disclosure to Garcia by "inflating the value of the dealership and failing to be honest about the inventory."  *Id.*  Garcia further alleges that in reliance upon Cureton's promises and misrepresentations, Garcia signed and became personally liable under a promissory note payable to Cureton in connection with the purchase.  *Id.*  Garcia also alleges that Cureton converted funds and assets of the dealership to his own use and deprived Garcia and the dealership of the needed capital to conduct its business.  *Id.*

Another shareholder in SGE, Eugene Shipley, intervened in the state court action on June 2, 2011.  (Doc. 1 at pp. 13-15).  Shipley's First Amended Plea in Intervention, his live pleading, brings similar claims against Cureton for breach of fiduciary duty and fraudulent misrepresentations inducing Shipley to sign and become personally liable under the promissory note.  (Doc. 32).  Shipley also alleges that Cureton violated the terms of the purchase agreement, causing Shipley to incur the debt for which he is personally liable, and that Cureton tortiously interfered with the contractual and business relations of SGE, Shipley, and "Harley Davidson."  (Doc. 32).

---

[1]  The dealership includes two locations in McAllen, Texas and San Benito, Texas.

On July 11, 2011, Cureton answered and counterclaimed against Shipley and Garcia for their defaults on the note and on their warranty of payment under a security agreement in favor of Cureton. (Doc. 1 at pp. 29-39). Cureton admits in his answer that at one time, he owned a controlling interest in RGV Harley-Davidson, LP ("RGVHD"), the entity which previously owned the dealership. *Id.* Cureton's First Amended Counterclaim, his live pleading, includes copies of the following: (1) the April 16, 2009 "Asset Purchase Agreement" between SGE as "Buyer" (with Shipley and Garcia as "Buyer's Principals") and RGVHD as "Seller" (with Cureton as "Seller's Principal"), as amended on April 17, 2009 and modified on June 30, 2009; (2) the June 30, 2009 "$7 Million Promissory Note" between SGE, Shipley, and Garcia as "Makers" and Cureton as "Lender"; and (3) the June 30, 2009 "Security Agreement" between SGE, Shipley, and Garcia as "Debtors" and Cureton as "Secured Party." (Doc. 59, Exs. 1-5). Cureton's counterclaim alleges that through the purchase agreement, he agreed to sell the assets of the dealership for $11 million and "the cost incurred by Seller to purchase all New Vehicles, all Used Non-Floor Plan vehicles and all Parts." (Doc. 59). The parties agreed that at closing, SGE would wire-transfer to RGVHD a $4 million base purchase price and deliver to RGVHD a $7 million promissory note and security agreement in favor of Cureton. *Id.* (citing Ex. 5). The closing date of the purchase agreement was August 1, 2009. *Id.* (citing Ex. 4).

Cureton alleges that as of January 1, 2011, the principal balance on the note was $6,606,518.56 and a monthly payment of $62,918.00 was due on that date and on the first day of each month thereafter, and that no payments of principal or interest have been received in 2011 or 2012. *Id.* Further, SGE's commencement of a Chapter 11 bankruptcy proceeding on January 5, 2011 was an event of default under both the note and the security agreement. *Id.* Therefore, under the provisions of the note, Cureton declared the entire unpaid principal and accrued

interest accelerated and immediately due and payable on January 11, 2011. *Id.* Cureton alleges that Shipley and Garcia are individually, jointly, and severally liable to him under the terms of the note as makers and under the terms of the security agreement as guarantors. *Id.* Cureton further alleges that SGE, co-maker under the note, filed a "preference" action against Cureton for refund of payments he received from SGE during the 90 days prior to its bankruptcy filing, and that Shipley and Garcia are jointly and severally liable to Cureton for any refunds. *Id.* Cureton also brings counterclaims against Shipley and Garcia for fraud and intentional misrepresentation, equitable estoppel, promissory estoppel, and fraud by nondisclosure, all arising from Shipley's and Garcia's alleged failure to abide by terms in the purchase agreement requiring SGE to have secured readily available funds to pay the base purchase price on the closing date and to maintain cash reserves sufficient to fulfill SGE's obligations under the $7 million note. *Id.* (citing Ex. 5).

Simultaneous with the filing of his answer and original counterclaims, Cureton removed the case on the grounds that this Court has diversity jurisdiction over the action, in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States. (Doc. 1); *see* 28 U.S.C. §§ 1332(a), 1441, 1446. Subsequent to removal, Garcia moved to remand and for leave to file crossclaims against Shipley, and Cureton moved to dismiss Garcia's and Shipley's fraud-based claims against him under Federal Rule of Civil Procedure 9(b). (Docs. 3, 7, 10, 16). The Court considered all of these motions at the initial pretrial conference on October 5, 2011. *See* 10/05/2011 Minute Entry. The Court denied remand, finding that diversity of citizenship exists among the parties and that Garcia's request to bring crossclaims against Shipley should be allowed and does not require realignment that would destroy diversity. (Doc. 28). The Court also declined to dismiss Garcia's and Shipley's fraud claims but ordered these parties to amend their pleadings against Cureton within 21 days in order

to meet the requirements of Rule 9(b).  (Doc. 27).  Shipley timely amended his pleading but Garcia waited almost three months to file his amended complaint against Cureton.  (Docs. 32, 39).  Thus, Garcia's late amendment was stricken by the Court for failure to request leave to amend.  (Doc. 44).[2]  Garcia's crossclaims against Shipley, which the Court did allow, consist of allegations of breach of fiduciary duty, negligence, business disparagement, and fraud arising from Shipley's alleged mismanagement of the dealership which forced SGE to file bankruptcy. (Doc. 29).

On January 24, 2012, apparently after a mediation involving the parties and SGE had failed, SGE moved to intervene as a plaintiff and to join RGVHD as an "indispensable" party defendant whose presence in the case would destroy diversity of citizenship.  (Doc. 40).  Cureton opposed SGE's intervention on various grounds, to which SGE responded by moving to withdraw its request to intervene and instead bringing a separate action against Cureton, RGVHD, and RGVHD's general partner, T.J.A.S., LLC ("TJAS"), in the 370th Judicial District Court, Hidalgo County.  (Docs. 45, 46; Doc. 46, Ex. A).  SGE's causes of action are for avoidance of the purchase transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), common law fraud and fraud by non-disclosure, alter ego and piercing the veil of RGVHD, breach of contract and breach of the duty of good faith and fair dealing, conversion, and theft by deception, all arising from allegations that Cureton's pre- and post-closing conduct were intended to ensure that the SGE business would fail so that Cureton could reacquire the dealership at a profit.  (Doc. 46, Ex. A).  Cureton's alleged "fraudulent scheme" included misrepresenting the nature of his ownership of the dealership, selling the dealership at a grossly inflated price, interfering with dealership operations and depriving SGE of needed cash flow, refusing to fulfill his promise to consult, breaching his duty not to compete with SGE by

---

[2]  Garcia filed his now-pending motion for leave to amend his complaint on March 20, 2012.  (Doc. 56).

conspiring with others to purchase a competing motorcycle dealership in Hidalgo County, and defaming the SGE business to Harley-Davidson, SGE's customers, and the public. *Id.* Garcia intervened in the state court action, asserting a cause of action for fraud and various defenses to his liability under the purchase agreement and the note. (Doc. 49, Ex. A). The factual allegations underlying Garcia's claims are essentially the same as those supporting SGE's pleading, with an emphasis on Cureton's alleged misrepresentations regarding his ownership of the dealership, the value of the business and its inventory, and his promise to provide consulting services to help with the transition of ownership. *See id.* In light of the filing of the state court action, both SGE and Garcia asked the Court to abstain from deciding the federal case. (Docs. 46, 49). Subject to his request for abstention, Garcia also moved for leave to amend his complaint in this case to assert virtually the same claims against RGVHD and TJAS that he asserts as an intervenor. (Doc. 56).

## B.     Civil Action No. 12cv89

On March 2, 2012, Cureton filed an opposition to the requests to withdraw the motion to intervene and for abstention, and removed the state-court case that is now Civil Action No. 12cv89. 11cv204 at (Docs. 52, 53); 12cv89 at (Doc. 1). Cureton argues that all causes of action plead by SGE and Garcia against the "valueless shell remains" of RGVHD and its equally valueless general partner, TJAS, arise from the allegation that such entities were the alter ego of Cureton, and from allegations regarding Cureton's conduct. *Id.* Now appearing to acknowledge that SGE is a proper party to this dispute, Cureton objects to SGE's request to withdraw its motion to intervene and claims that the Court has diversity jurisdiction over the latest removed action in that Cureton is the only true Defendant and SGE and Cureton are diverse in citizenship. *Id.*; *see* 28 U.S.C. § 1332(a), 1441, 1446. More specifically, Cureton asserts that SGE did not

disclose any claim against RGVHD and TJAS in its bankruptcy filings and that SGE and its part-owner, Garcia, should be judicially estopped from asserting any claim here, or at the very least considered to have judicially admitted that RGVHD and TJAS did not cause their damages. 12cv89 at (Doc. 1).  Cureton also claims that SGE's and Garcia's causes of action plead in an attempt to disallow Cureton's claim in the bankruptcy proceeding invoke this Court's bankruptcy jurisdiction.  11cv204 at (Docs. 52, 53); 12cv89 at (Doc. 1); *see* 28 U.S.C. §§ 1334(b), 1452(a). Also on these bases, Cureton asks the Court to consolidate the two removed actions and realign the parties with Cureton as the Plaintiff/Counter-Defendant and SGE, Shipley, and Garcia as co-Defendants/Counter-Plaintiffs.  11cv204 at (Docs. 52, 53); *see also* 12cv89 at (Docs. 12, 22). SGE and Garcia responded to the removal by filing the instant motions to remand and/or for abstention, contending that RGVHD and TJAS are proper Defendants against whom the defenses of judicial estoppel and judicial admission do not apply, and that the case is a "non-core" proceeding that the Court must abstain from deciding and remand.  12cv89 at (Docs. 5, 8).

### III.    SGE's and Garcia's Motions to Remand

As the Court need not consider the motions to intervene, to withdraw the motion to intervene, to abstain, or for leave to amend in Civil Action No. 11cv204 if it finds that removal of Civil Action No. 12cv89 was proper and that the cases should be consolidated, the Court now turns to the motions to remand.  12cv89 at (Docs. 5, 8).[3]  Although SGE's and Garcia's motions make essentially the same arguments, SGE's motion is much more detailed.  *See id.*  Thus, in responding to both motions, Cureton refers mostly to SGE's motion but states that all of his arguments are intended to apply equally to Garcia's motion.  (Doc. 12).  The Court will adopt the same approach.

---

[3]  Unless otherwise noted, all ensuing citations to the record are to docket entries in Civil Action No. 12cv89.

A.       **Diversity Jurisdiction**

1.       **Improper Joinder Standard of Review**

Cureton's first basis for removal is that absent the improper joinder of RGVHD and TJAS, the parties are diverse in citizenship and the Court has diversity jurisdiction over the action. The doctrine of improper joinder constitutes a "narrow exception" to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a "heavy one." *Campbell v. Stone Ins.*, 509 F.3d 665, 669 (5th Cir. 2007) (quoting *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). The Fifth Circuit has recognized two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). Cureton has not claimed any actual fraud; therefore, the Court's inquiry is limited to whether a reasonable basis exists for predicting that SGE might be able to recover against RGVHD and/or TJAS, the non-diverse Defendants. *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648). "This means that there must be a reasonable possibility of recovery, not merely a theoretical one." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (emphasis omitted). The Fifth Circuit has likened this inquiry to the standard of review for evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Campbell*, 509 F.3d at 669; *see also Smallwood*, 385 F.3d at 573. Ordinarily, no improper joinder exists if a plaintiff survives this Rule 12(b)(6)-type analysis. *Smallwood*, 385 F.3d at 573. However, in cases "in which a plaintiff has stated a claim, but has misstated or omitted discrete [and undisputed] facts that would determine the propriety of joinder," the district court may, in its discretion, "pierce the pleadings" and conduct a summary judgment-type

inquiry. *Id.* at 573-74.  At all times, the court must focus its inquiry "on the joinder, not the merits of the plaintiff's case."   *Id.* at 573.  The court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff."   *Travis*, 326 F.3d at 649.  Further, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor."   *Id.*

**2.     Improper Joinder of "Valueless" Defendants**

Cureton first appears to argue that RGVHD and TJAS are improperly joined because they are "valueless" and alleged to be the alter ego of Cureton whose conduct forms the bases for SGE's and Garcia's claims.  *See* 11cv204 at (Docs. 52, 53).  However, at the very least, RGVHD as the party to the purchase agreement with SGE is a proper Defendant to SGE's breach of contract claim and to SGE's and Garcia's claims which essentially seek to void the agreement as procured by fraud.  *See City of Robstown v. Meecorp Capital Mkts., L.L.C.*, 2006 WL 1406590, at * 2 (S.D.Tex. May 19, 2006) ("Federal courts have consistently held that a party to an agreement in dispute is an indispensable party in a suit seeking to rescind, annul, or interpret that agreement.") (citing cases).  That this entity has no assets, or that Cureton may be held liable as its alter ego, does not change this fact.  The Court therefore rejects Cureton's initial argument as a basis for exercising jurisdiction over the case.

**3.     Defenses to Liability as Grounds for Improper Joinder**

The primary basis for Cureton's allegations of improper joinder is that SGE's and Garcia's claims against RGVHD and TJAS are barred by judicial estoppel or judicial admission, to which SGE first objects on the grounds that the Court must consult only the allegations in the pleadings and cannot consider Cureton's asserted defenses in determining improper joinder. (Docs. 1, 5).  The Court finds this argument unavailing, as the improper joinder standard

articulated above does not exclude consideration of defenses to liability, whether apparent from the pleading or from summary judgment-type evidence.  Further, by appealing to SGE's actions and filings in bankruptcy as support for its improper joinder argument, Cureton has asked the Court to pierce the pleadings to conduct a summary judgment-type inquiry.  (Docs. 1, 12).  In turn, SGE has produced evidence in an attempt to refute Cureton's characterization of SGE's actions in bankruptcy.  (Doc. 5).  Therefore, the Court need not confine itself to the parties' pleaded allegations in determining whether RGVHD and TJAS are proper Defendants to the action.

**4.      Judicial Estoppel**

SGE also takes issue with Cureton's application of the law of judicial estoppel to the facts of this case.  (Doc. 5).  It is well-established in this Circuit that "'[t]he doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'"  *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) (quoting 18 James Wm. Moore et al., Moore's Federal Practice § 134.30 at 63 (3d ed. 2011)).  "It is 'an equitable doctrine invoked by a court at its discretion' to 'protect the integrity of the judicial process.'"  *Id.* at 574 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).  "Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary."  *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)) (emphasis omitted).  "'The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"  *Id.* at 206 (quoting *United States v.*

*McCaskey*, 9 F.3d 368, 378 (5ᵗʰ Cir.1993)).  In determining whether judicial estoppel should apply, the Fifth Circuit considers: (1) whether the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.  *Reed*, 650 F.3d at 574.

In a bankruptcy proceeding, the Fifth Circuit applies judicial estoppel "'against the backdrop of the bankruptcy system and the ends it seeks to achieve.'"  *Id.* (quoting *Coastal Plains*, 179 F.3d at 208).  "These ends are 'to bring about an equitable distribution of the bankrupt's estate among creditors holding just demands,' and to 'grant a fresh start to the honest but unfortunate debtor.'"  *Id.* (quoting *Kothe v. R.C. Taylor Trust*, 280 U.S. 224, 227 (1930); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, (2007)) (internal citations omitted). "Therefore, judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate."  *Id.*

Cureton takes the position that by suing RGHVD and TJAS, SGE has taken a legal position that is clearly inconsistent with its failure to disclose any claim against these entities in its schedule of assets, and that the bankruptcy court accepted the nondisclosure to the detriment of creditors when the court approved the sale of SGE's assets.  (Docs. 1, 12).[4][5]  This position operates on the assumption that the nondisclosure disadvantaged creditors and potential buyers of SGE's "purchased assets" at auction because the availability of a setoff to the liabilities

---

[4] *See* (Doc. 1, Ex. E (February 2, 2011 Schedule of Assets); Ex. F (February 3, 2011 Amended Schedule of Assets); Ex. K (June 24, 2011 "Order Authorizing and Approving Sale of Debtor's Assets")).

[5] Cureton also submits that the bankruptcy court accepted SGE's nondisclosure to the detriment of creditors when it set a bar date for creditors to file proofs of claim, but has provided no argument to substantiate that the nondisclosure may have affected the court's ruling or any creditor's decision to file a proof of claim.  *See* (Docs. 1, 12; Doc. 1, Ex. H (February 15, 2011 "Order Granting Debtor's Motion for Order Establishing Bar Date for Filing Proofs of Claim")).

assumed through the purchase was "an important piece of information for any potential bidder deciding to submit a bid or [for] a creditor in deciding whether to object to the sale or the proposed sale procedures." *Id.* More specifically, Cureton claims that the potential setoff would have applied to the purchaser's assumption of all indebtedness due Cureton under his real estate leases with SGE, which contained options to purchase. *Id.* According to Cureton, "[i]t is entirely conceivable that any prospective purchaser would have paid a higher amount for the business if those claims were included in the sale, as the prospective purchaser could have used the claim as leverage against Cureton to lower the rent or the option purchase price of the property." (Doc. 12). Further, "a creditor would likely prefer if SGE sold the assets containing the claim against Cureton, RGVHD, and TJAS to achieve a higher price for those assets than to retain the claim and allow the estate to be depleted through the attorney fees being assessed against the estate while work on this…claim continues." *Id.*

The Court accepts SGE's counterargument that all claims against third parties were in fact excluded from the sale, as the schedule of excluded assets lists "all rights, claims, causes of action, rights of recovery and rights of setoff of any kind against third parties (i) relating to the assets, properties, business or operations of Seller arising out of events occurring prior to the Initial Closing Date or (ii) which may arise in connection with discharge by Seller of the Retained Liabilities." (Doc. 5, Exs. A-4 and A-5 at Schedule 3; *see also* Doc. 5, Ex. A at ¶¶ 18-21). Therefore, the Court turns to whether the bankruptcy court accepted SGE's nondisclosure of a claim excluded from the sale, to the detriment of creditors, when it approved the sale of SGE's purchased assets. As Cureton points out, the Fifth Circuit first observed in *Coastal Plains* that the "judicial acceptance" requirement "'does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits. Rather, judicial

acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'"  *Coastal Plains*, 179 F.3d at 206 (quoting *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)); (Doc. 12). Further, the Fifth Circuit has found that "'[j]udicial estoppel is particularly appropriate where…a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset.'"  *Reed*, 650 F.3d at 574 (quoting *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).  The rationale for this is that "the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims."  *Coastal Plains*, 179 F.3d at 207-08 (emphasis omitted).  "Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized."  *Id.* at 208. More specifically,

> [T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Id.* (quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996)) (emphasis omitted). The Court finds that this justification and its application to the facts in *Coastal Plains* do not coincide with the facts of this case.  In *Coastal Plains*, the undisclosed claim was purported to be *included* in the sale of the debtor's assets to a corporation formed by the debtor's CEO, and then asserted *post*-confirmation and discharge.  *See id.* at 203-04, 213.  Thus, creditors may have chosen to bid more for the debtor's assets had they known of the claim, and the debtor clearly stood to gain from its nondisclosure.  *Id.*  Here, however, third-party claims were excluded from

the sale of SGE's assets, and the Chapter 11 case is continuing; as of the filing of SGE's request to remand, no deadline existed for amending SGE's schedule, no Chapter 11 plan had been proposed or confirmed, and no discharge had occurred.  (Doc. 5, Ex. A at ¶¶ 9, 14, 25).  Further, SGE had amended its schedule to include the unliquidated claim against RGVHD and TJAS and is pursuing the claim as the debtor-in-possession acting as trustee—that is, on behalf of the estate.  *Id.* at ¶¶ 6, 12, 25.  The Court also finds noteworthy that SGE disclosed its potential, unliquidated claims against Cureton *before* the court approved the sale of assets.  *See* (Doc. 1, Exs. F, K).  Therefore, any potential purchaser of the assets would have had the same degree of notice of a possible setoff against the assumed liability of the real estate leases between SGE and Cureton had the claims against RGVHD and TJAS also been disclosed at that time.  In sum, the Court finds that the bankruptcy court did not accept the nondisclosure of claims against RGVHD and TJAS in such a way as to deprive creditors of the value of those claims.  Therefore, the doctrine of judicial estoppel does not operate as a defense to these parties' liability so as to render them improperly joined.[6]

### 5.      Judicial Admission

Relying solely on *Larson v. Groos Bank, N.A.*, 204 B.R. 500 (W.D.Tex. 1996), and the Fifth Circuit's general admonition that "'the integrity of the bankruptcy system depends on full and honest disclosure by debtors of their assets,'" Cureton further argues that SGE and Garcia should at least be deemed to have judicially admitted that RGVHD and TJAS did not cause their damages because SGE failed to include a claim against these entities in its initial and first amended schedules of assets.  (Doc. 1); *see Coastal Plains*, 179 F.3d at 208 (quoting *Rosenshein*,

---

[6]  Having made the determination that SGE as the debtor did not take a position accepted by the court to the detriment of creditors, the Court need not resolve the parties' arguments regarding whether SGE is akin to an "innocent" trustee who "may pursue for the benefit of creditors a judgment or cause of action that the debtor—having concealed that asset during bankruptcy—is himself estopped from pursuing."  *See* (Docs. 5, 12); *Reed*, 650 F.3d at 579.

918 F.Supp. at 104).  In *Larson*, the district court concluded that a plaintiff's representation in his bankruptcy schedule that he had no contingent and unliquidated claims equated to a judicial admission that he "placed no value" on claims pending in federal court that arose before he filed bankruptcy.  *Larson*, 204 B.R. at 502.  In other words, the plaintiff had judicially admitted that he suffered no damages as a result of the conduct alleged in the federal civil suit.  *Id.*  The court made this finding on the basis that "factual assertions in pleadings, *which have not been superseded by amended pleadings*, are judicial admissions against the party that made them," and noted that the existing schedule reflected "a zero value given to the instant unliquidated claim[s]"; thus, the court found it unnecessary to entertain the plaintiff's argument that he could reopen the bankruptcy proceeding and amend the schedule to reflect a greater value for the claims.  *Id.* at 502 (citing *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983)) (emphasis added) & n.3.  In contrast to *Larson*, the bankruptcy proceeding at issue here is continuing and no deadline for amending its schedule had been imposed when SGE in fact amended the schedule to include the claims against RGVHD and TJAS.  SGE is now pursuing those claims on behalf of the estate.  Therefore, SGE's nondisclosure of the claims in previous schedules does not operate as a judicial admission of no damages in this case and cannot serve as a defense to SGE's claims against RGVHD and TJAS.  For all of these reasons, the Court finds that Cureton has not met his burden to show that RGVHD and TJAS are improperly joined.

**B.    Federal Bankruptcy Jurisdiction**

**1.    Overview**

The Court now turns to Cureton's additional argument that the Court has federal bankruptcy jurisdiction over this action under the authority of 28 U.S.C. §§ 157(b)(2), 1334(b), and 1452(a) due to SGE's allegations that Cureton filed a "fraudulent" proof of claim in the

bankruptcy proceeding.  (Doc. 1).  Under § 1452(a), "[a] party may remove any claim or cause

of action in a civil action…to the district court for the district where such civil action is pending,

if such district court has jurisdiction of such claim or cause of action under section 1334 of this

title."  28 U.S.C. § 1452(a).  Section 1334 provides, in relevant part:

> (a) Except as provided in subsection (b) of this section, the district courts shall have
> original and exclusive jurisdiction of all cases under title 11.

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that
> confers exclusive jurisdiction on a court or courts other than the district courts, *the
> district courts shall have original but not exclusive jurisdiction of all civil proceedings
> arising under title 11, or arising in or related to cases under title 11.*

*Id.* § 1334(a)-(b) (emphasis added).  Under these provisions, "the district court maintains all of

the jurisdiction applicable to bankruptcy matters subject only to its reference of cases and

proceedings to the bankruptcy courts pursuant to 28 U.S.C. § 157(a)."  *In re Adams*, 809 F.2d

1187, 1190 (5th Cir. 1987); *see* 28 U.S.C. § 157(a) ("Each district court may provide that any or

all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to

a case under title 11 shall be referred to the bankruptcy judges for the district.").  The district

court may withdraw that reference, in whole or in part, "for cause shown."  28 U.S.C. § 157(d).

**2.      Removal to District Court**

SGE first argues that Cureton's removal should have been to the bankruptcy court and

therefore is procedurally improper, but the statutory authority cited above makes clear that

subject matter jurisdiction over cases removed under § 1452(a) lies with the district court which

then refers the cases to the bankruptcy court.  (Doc. 5).  Consistent with this authority, the

Southern District of Texas's recently amended order of reference reflects an understanding that

these cases are removed to the district court upon which they are subject to the reference.  *See*

http://www.txs.uscourts.gov/bankruptcy/genord/2012/ at 2012-6 (noting that order supersedes

General Order 2005-6).  Therefore, notwithstanding that a bankruptcy local rule cited by SGE recites certain procedural requirements for removal to the "bankruptcy court," *see* BANKR. LOCAL RULE 9027-1, the Court finds that Cureton's Notice of Removal to the court with subject matter jurisdiction over the action contains no procedural deficiency warranting remand.

**3.      Mandatory Abstention**

The Court next turns to SGE's argument that its claims constitute exclusively "non-core," "related to" proceedings subject to "mandatory abstention" under § 28 U.S.C. § 1334(c).  (Docs. 5, 23).  Section 157(b)(1) provides that bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," that are referred by the district court.  28 U.S.C. § 157(b)(1).  A bankruptcy court cannot, however, enter final orders or judgments in "non-core" proceedings without the consent of the parties.  *Id.* § 157(c).  Absent consent, the bankruptcy judge must instead submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment must be entered by that court.  *Id.*  Core proceedings are statutorily defined in a non-exclusive list.  *Id.* § 157(b)(2).  The statute defines non-core proceedings as those which are not core but are "otherwise related to a case under title 11."  *Id.* § 157(c)(1).  According to SGE, the distinction is important here because § 1334(c) qualifies that:

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, *related to a case under title 11 but not arising under title 11 or arising in a case under title 11*, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court *shall* abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

*Id.* § 1334(c)(2) (emphasis added).   In other words, if SGE's state-law-based claims are exclusively "related to" its Chapter 11 bankruptcy, *i.e.*, non-core, the Court must abstain from hearing and remand the case if it can be timely adjudicated in Hidalgo County.  *See In re*

*Southmark Corp.*, 163 F.3d 925, 929 (5th Cir. 1999) (§ 1334(c) applies to cases removed to federal court under § 1452(a)).

Prior to the filing of SGE's action now removed to this Court, Cureton filed a proof of claim in the SGE bankruptcy for $6,606,518.56, an amount Cureton alleged was due him under the note. *See* (Doc. 5, Ex. A at ¶ 37). SGE then filed the present action alleging that its "severe financial distress caused by Defendants' fraud forced SGE to file bankruptcy." (Doc. 46, Ex. A at ¶ 44). SGE further alleges that Cureton "claims to be the holder of said note and has filed false claims in an effort to collect such note," and that he "knew his $7 million claim arose from his own fraud." *Id.* at ¶¶ 7, 45. Again, SGE's claims against all Defendants are for avoidance of a fraudulent transfer under TUFTA, common law fraud and fraud by non-disclosure, alter ego and piercing the veil of RGVHD, breach of contract and breach of the duty of good faith and fair dealing, conversion, and theft by deception, all arising from allegations that Cureton, both individually and through his business entities, engaged in a scheme to ensure the failure of SGE's business. Cureton contends, through his Notice of Removal and supplemental briefing, that these claims constitute core proceedings under § 157(b)(2). (Docs. 1, 12, 22, 24). More specifically, Cureton asserts that SGE's TUFTA claim brought in its capacity as trustee under 11 U.S.C. § 544(b) is a proceeding to avoid or recover a fraudulent conveyance deemed core under § 157(b)(2)(H). (Docs. 12, 22, 24); *see* 28 U.S.C. § 157(b)(2)(H) (defining "proceedings to determine, avoid, or recover fraudulent conveyances" as core). Cureton also contends that SGE's other causes of action either seek disallowance of Cureton's proof of claim or constitute counterclaims to Cureton's claim and therefore are core proceedings. (Docs. 1, 12, 22, 24); *see* 28 U.S.C. § 157(b)(2)(B) (defining "allowance or disallowance of claims against the estate" as

core proceeding), (C) (defining "counterclaims by the estate against persons filing claims against the estate" as core).

Notably, SGE provides no direct argument that its claims against Cureton fall outside the definitions of proceedings deemed core under § 157(b)(2)(B), (C), or (H).  Rather, SGE relies on the U.S. Supreme Court's decisions in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), to argue that SGE's claims encompassed by § 157(b)(2)(C) and (H) are no longer core because an Article III judge must enter final judgment on them.  (Docs. 5, 23).[7]  These decisions do not alter district courts' subject matter jurisdiction over proceedings "arising under" Title 11 or "arising in" or "related to" cases under Title 11.  *See Stern*, 131 S.Ct. at 2607 (allocation of authority to enter final judgment "does not implicate questions of subject matter jurisdiction"); *In re Carroll*, 464 B.R. 293, 309 (Bankr.N.D.Tex. 2011) ("*Stern* does not implicate the grant of subject matter jurisdiction over bankruptcy cases and proceedings arising in the bankruptcy case, under the Bankruptcy Code…or related to the bankruptcy case under 28 U.S.C. § 1334.").  Rather, *Stern* in particular speaks to the bankruptcy courts' lack of constitutional authority to exercise the "judicial Power of the United States" granted exclusively to Article III courts by entering final judgment in certain of those proceedings.  *See Stern*, 131 S.Ct. at 2600-01 (quoting U.S. CONST. art. III, § 1); *In re Carroll*, 464 B.R. at 309-10.  The statute itself avoids this constitutional infirmity in some cases, as it prevents bankruptcy courts from entering final judgment in proceedings "related to" cases under Title 11, *i.e.*, non-core proceedings.  *See* 28 U.S.C. § 157(c)(1).  However, the statute allows core proceedings, defined in § 157(b)(1) as those "arising under" Title 11 or "arising in" cases under Title 11 and including those proceedings set forth in the non-exclusive list in § 157(b)(2), to be adjudicated by the bankruptcy courts.  In *Stern*, the Supreme Court determined

---

[7]  SGE does not make the same argument with respect to claims deemed core under § 157(b)(2)(B).

that although the bankruptcy court had the statutory authority to adjudicate a state-law tortious interference claim defined as core under § 157(b)(2)(C), it could not constitutionally do so. *Stern*, 131 S.Ct. at 2601. The Court reached this conclusion upon consideration of those cases, including *Granfinanciera*, addressing the "public rights" exception to exclusive Article III jurisdiction. *Id.* at 2611-18. In *Granfinanciera*, the most recent case to have considered the public rights doctrine in the bankruptcy context, the Court had declined to find that an action filed on behalf of the bankruptcy estate to recover a fraudulent conveyance from a *non*-creditor fell within the exception. *Id.* at 2614; *see Granfinanciera*, 492 U.S. at 36. *Stern* interpreted the distinction made in *Granfinanciera* between the equivalent of suits at common law brought "'to augment the bankruptcy estate,'" which do not come within the exception, and "'creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res,'" which do, as "reaffirm[ing] that Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S.Ct. at 2614, 2618 (quoting *Granfinanciera*, 492 U.S. at 56). With respect to the tortious interference claim at issue in *Stern*, the Supreme Court determined that it was "a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim," and thus not a matter of public right to be decided outside the judicial branch. *Id.* at 2611.

SGE asks the Court to read *Stern* and its reliance on *Granfinanciera* expansively, and to find that SGE's claims falling within the definitions of core matters under § 157(b)(2)(C) and (H) are in fact non-core, "related to" proceedings that must be remanded to state court under § 1334(c). The Court recognizes that *Stern* spoke of its ruling as a "removal of counterclaims such

as [the one at issue] from core bankruptcy jurisdiction," but only insofar as it deprived the bankruptcy court of its ability to exercise a core function—that is, the ability to enter a final judgment. *Id.* at 2620. The Court described its holding as a "narrow one," and did not determine that a bankruptcy court may never enter final judgment on "counterclaims by the estate against persons filing claims against the estate"; rather, the constitutional test is whether the claims "would necessarily be resolved in the claims allowance process" and thus involve a public right. *Id.* at 2618, 2620. This constitutional test does not alter the statutory test for determining whether a proceeding is core under § 157(b)(1) or (b)(2) or, particularly since *Stern* does not implicate subject matter jurisdiction, whether it is subject to mandatory abstention under § 1334(c). Again, that test remains whether the claim "arises under" Title 11 or "arises in" a Title 11 case. In sum, although *Stern* determined that a bankruptcy court may not constitutionally enter final judgment on certain counterclaims under § 157(b)(2)(C), it did not rewrite the statute and reclassify those claims as "related to" proceedings under §§ 157(c)(1) or 1334(c). *See In re Ortiz*, 665 F.3d 906, 915 (7th Cir. 2011) (concluding that counterclaims before it could not constitutionally be determined by the bankruptcy court subsequent to *Stern* but remained "core proceedings [that] do not fit under § 157(c)(1)").[8] The Court recognizes that SGE did not file counterclaims to Cureton's proof of claim in the bankruptcy case, but rather sought to bring its suit in state court. Still, to the extent that SGE's claims are based on allegations that Cureton's proof of claim is "false" and "arose from his own fraud," they are properly construed as counterclaims to Cureton's proof of claim under § 157(b)(2)(C) and as concerning the allowance

---

[8]  The Court also observes that this district's revised order of reference states that if a bankruptcy judge determines that entry of final judgment "would not be consistent with Article III…in a particular proceeding referred under this order *and determines that proceeding to be a core matter*," the judge shall, unless otherwise ordered, submit proposed findings of fact and conclusions of law to the district court. *See* http://www.txs.uscourts.gov/bankruptcy/genord/2012/ at 2012-6. This language presupposes that a suit that a bankruptcy court cannot constitutionally determine remains statutorily core.

or disallowance of Cureton's claim under § 157(b)(2)(B).  The claims resolution process may leave certain factual and legal issues raised by these core claims pending, as well as SGE's request for damages, in which case those claims are not "necessarily resolvable" through that process and may not be finally resolved by the bankruptcy court.  Still, this fact does not change their statutory classification as core claims under § 157(b)(1) and (b)(2) and, relevant to this case, under § 1334(c).

The Court also declines to interpret *Stern* and *Granfinanciera* as altering the statutory classification of SGE's TUFTA claim.    Regardless of whether *Stern*'s reliance on *Granfinanciera* calls into question bankruptcy courts' ability to finally determine fraudulent conveyance actions against creditors who have filed proofs of claim, SGE would have no standing to assert its TUFTA claim against Cureton but for Title 11, § 544(b), which allows a trustee or debtor-in-possession to assert this state-law claim that otherwise could only be brought by a creditor.  *See* 11 U.S.C. § 544(b)(1); TEX. BUS. & COM. CODE § 24.005(a); *In re Gandy*, 299 F.3d 489, 495-96 (5th Cir. 2002) (describing as "core" debtor-in-possession's exercise of "strong arm" powers under § 544(b) to avoid pre-bankruptcy transfer that unsecured creditor could have avoided under applicable state law, as such a claim is "created by the Bankruptcy Code and not—outside of bankruptcy—available to [the debtor]").  In other words, this cause of action remains one that "arises under" Title 11 and exists only by virtue of SGE's bankruptcy and its debtor-in-possession status.  For all of these reasons, the Court concludes that SGE's claims against Cureton cannot be reclassified under the statute as exclusively non-core, "related to" proceedings subject to mandatory abstention under § 1334(c).

Accordingly, the Court also finds that it need not abstain from deciding other claims that are merely "related to" SGE's bankruptcy, including non-debtor Garcia's intervention claims

against all Defendants and SGE's claims against RGVHD and TJAS, who have not filed proofs of claim.   Again, § 1334(c) requires district courts to abstain from hearing a "related to" proceeding "with respect to which an action could not have been commenced in a court of the United States absent jurisdiction" under § 1334(b).  28 U.S.C. § 1334(b).  In other words, for mandatory abstention to apply, the "related to" claim itself must have "'no independent basis for federal jurisdiction, other than § 1334(b).'"  *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007) (quoting *Schuster v. Mims* (*In re Rupp & Bowman*), 109 F.3d 237, 239 (5th Cir. 1997)).  The Fifth Circuit has determined that where a complaint gives rise to a core claim as well as one "supplemental" to it and therefore within the district court's jurisdiction under 28 U.S.C. § 1367(a), an independent basis exists for the exercise of federal jurisdiction over the "related to" claim and the court need not abstain from deciding it.  *Id.* at 299-301.   Section 1367(a) provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  Here, where the Court has original, core jurisdiction over at least some of SGE's claims against Cureton, the Court has no difficulty finding that any "related to" claims against this party, as well as SGE's virtually identical causes of action against the additional Defendants, are "so related" to the core claims that they form part of the same case or controversy, and that the Court may therefore exercise supplemental jurisdiction over them.  This supplemental jurisdiction also "shall" include Garcia's intervention claims, which largely track

the allegations by SGE.  For all of these reasons, the Court finds that § 1334(c) does not require

that it abstain from deciding this case.[9]

**4.      "Mandatory Abstention" under 28 U.S.C. § 1441(c)**

SGE also characterizes the recently amended 28 U.S.C. § 1441(c) as a "mandatory

abstention" provision, and claims that it also requires the Court to remand the action.  (Docs. 5,

23).  That provision states as follows:

> (c) Joinder of Federal law claims and State law claims.—(1) If a civil action includes—
>
> > (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and
> >
> > (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).
>
> (2) Upon removal of an action described in paragraph (1), *the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed.* Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

28 U.S.C. § 1441(c) (emphasis added).  The Court finds that this section does not authorize the

relief requested by SGE.  First, § 1441(c) speaks of severance and remand, not abstention.  Also,

it requires severance and remand only where the action includes both a federal claim "within the

meaning of section 1331 of this title" and a claim not within the Court's original or supplemental

---

[9]  The Court recognizes that it has the discretion to decline to exercise supplemental jurisdiction over a claim if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  None of SGE's claims raises novel or complex issues, and all are at least "related to" the bankruptcy and therefore the Court has original jurisdiction over them under § 1334(b), notwithstanding § 1334(c).  Further, for the reasons highlighted in the ensuing sections, no compelling reasons exist for declining to exercise jurisdiction over this case.

jurisdiction. Therefore, it facially does not apply to an action over which the Court has original and supplemental jurisdiction under §§ 1334 and 1367. For these reasons, § 1441(c) cannot serve as a basis for the Court to "abstain" from hearing this case.

**5.      Permissive Abstention and Equitable Remand**

SGE also argues, in the alternative, that the Court should exercise its discretion to abstain from deciding the case and remand it under the permissive abstention and equitable remand provisions of 28 U.S.C. §§ 1334(c) and 1452(b), respectively. (Doc. 5). The first of those provisions states in relevant part that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). In exercising its "broad discretion" to decide whether to abstain under § 1334(c)(1), a court may consider the following, non-exclusive factors:

(1) the effect or lack thereof on the efficient administration of the estate;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) jurisdictional basis, if any, other than § 1334;

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy docket;

(10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*E.g.*, *In re Ramirez*, 413 B.R. 621, 631-32 (Bankr.S.D.Tex. 2009) (citing cases).

The equitable remand provision of § 1452(b) provides that the court to which a claim or cause of action is removed under § 1452(a) "may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Courts have found "considerable overlap" between the analyses under §§ 1334(c)(1) and 1452(b) and therefore apply the same factors listed above in determining whether equitable remand is appropriate. *In re Ramirez*, 413 B.R. at 632 (quoting *J.T. Thorpe Co. v. Am. Motorists*, 2003 WL 23323005, at *21 (S.D.Tex. June 9, 2003)). Additional factors to consider are:

(1) forum non conveniens;

(2) whether the civil action has been bifurcated during removal, which favors a trial of the entire action in state court;

(3) whether the state court has greater ability to respond to questions of state law;

(4) the particular court's expertise;

(5) the inefficiencies of proceedings in two forums;

(6) prejudice to the involuntarily removed party;

(7) comity; and

(8) possibility of an inconsistent result.

*Id.* at 633 (citing cases).

The parties' briefing references some, but not all, of the above-mentioned factors.  (Docs. 5, 12).  Apparently citing to the first, second, and fifth of the equitable remand factors, SGE first argues that remand is warranted because the case "has been actively proceeding in state court." (Doc. 5).  However, Cureton correctly points out that the case was immediately removed.  (Doc. 12).  This fact also calls into question SGE's accusation of "blatant forum shopping" by Cureton "to evade a state courthouse which has issued unfavorable rulings," which it uses to argue that the tenth, thirteenth, and fourteenth of the permissive abstention factors and the sixth and seventh of the remand factors weigh in their favor.  (Doc. 5).  To this Court's knowledge, the state court made no rulings "unfavorable" to any Defendant before removal.  In fact, SGE's actions in filing the state-court lawsuit, and Garcia's intervention, fit more aptly within SGE's definition of forum shopping, as they occurred after this Court denied Garcia's motion to remand his action against Cureton pending in this Court.  11cv204 at (Doc. 28).  SGE also argues that the twelfth abstention factor weighs in its favor, as "this action involves ONLY non-debtor parties," but SGE cannot seriously make this contention; although it has debtor-in-possession status, SGE is the entity in bankruptcy.  (Doc. 5).  SGE's final argument addressing the second, third, and sixth abstention factors and the third and fourth remand factors is that "[s]tate law issues predominate over bankruptcy issues…, and the state court is better suited than the federal court to decide difficult or unsettled issues of state law."  *Id.*  However, that SGE has crafted its pleading to assert solely state-law causes of action does not change the nature of its proceeding as an attempt to defeat Cureton's proof of claim in the bankruptcy case.  Further, SGE does not explain how any of the state-law issues presented by this case are difficult or unsettled.  In sum, none of the arguments made by SGE favors abstention and remand, and in fact the existence of a separate, substantially related suit pending in this Court mandates against splitting the parties' dispute into

two cases proceeding in two different fora.  For these reasons, in the exercise of its discretion, the Court will not abstain from deciding and remand the case under §§ 1334(c) and/or 1452(b).

**6.**     ***Burford* Abstention**

SGE also makes a generalized plea to the abstention doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), claiming that the Court should abstain from deciding the case because "each and every claim asserted is only based on State law, and several claims brought are new and developing areas of state law."  (Doc. 5).   *Burford* abstention "is appropriate in two circumstances: first, when a case involves 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the particular case at bar,' and second, when 'the exercise of federal jurisdiction over the question in the case would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"  *E.g.*, *Health Net, Inc. v. Wooley*, 534 F.3d 487, 496 (5th Cir. 2008) (quoting *Barnhardt Marine Ins., Inc. v. New England Int'l Surety of Am., Inc.*, 961 F.2d 529, 531 (5th Cir. 1992)).  SGE does not explain, nor can the Court discern, how any of its causes of action involve difficult questions of state law and state policy concerns to the extent that abstention would be necessary.  Therefore, SGE's appeal to *Burford* fails.

**7.**     **Withdrawal of Reference to Bankruptcy Court and Consolidation**

Cureton asks that the Court withdraw the reference and consolidate this action with Civil Action No. 11cv204 both in light of *Stern* and to allow the parties to save time and attorney's fees and avoid inconsistent results.  (Docs. 12, 22).   Again, the Court may withdraw this District's reference to the bankruptcy court of actions within the Court's original, bankruptcy jurisdiction "for cause shown."  28 U.S.C. § 157(d).  In combination, the fact that the bankruptcy court may not be able to enter final judgment on certain of SGE's claims, the presence of non-

debtor and non-creditor parties, and the existence of a separate, substantially related suit already pending in this Court and over which it has diversity jurisdiction, provide the cause shown. Accordingly, the Court will withdraw the reference and consolidate this case with Civil Action No. 11cv204.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Shipley Garcia, Enterprises, LLC's and Bobby Garcia's Motions to Remand (Docs. 5, 8) are **DENIED**.  The Court further **ORDERS** that the reference to the bankruptcy court is withdrawn and this case is consolidated with Civil Action No. 11cv204 also pending in this Court.

SO ORDERED this 7th day of August, 2012, at McAllen, Texas.

Randy Crane
United States District Judge